Filed 9/18/25  In re Jayden C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re JAYDEN C. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B339441 <br><br> (Los Angeles County Super. Ct. No. 24CCJP00792) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> Y.R., <br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mark A. Davis, Judge.  Dismissed in part, affirmed in part.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracy Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

Y.R. (Mother) has five children with four different fathers: Jayden C. (born 2011, whose presumed father is Jose C.); Jayleene C. (born 2013, whose presumed father is Miguel P.); Sophia P. (born 2014, whose presumed father is Christian G.); and Luna A. (born 2019) and Julian A. (born 2021), both of whose presumed father is Eduardo A. All of the fathers except Christian G. (Sophia's presumed father) participated in the dependency proceeding at issue and were nonoffending; none are parties to this appeal.

When the dependency case began, Sophia was the only of Mother's children living with her. The other four children resided with their fathers and saw Mother infrequently. The juvenile court asserted jurisdiction over all five children based on Mother's failure to protect Sophia from physical and sexual abuse by Jose Z., her male companion. Immediately after asserting jurisdiction, the court terminated jurisdiction over Jayden, Jayleene, Luna, and Julian by making juvenile custody orders (commonly called exit orders) that included an award of sole physical custody to those children's respective fathers and monitored visitation for Mother. As to Sophia, the court removed her from Mother's care and ordered monitored visitation along with Mother's participation in services.

2

Mother now appeals these monitored visitation orders. While Mother's appeal was pending, the juvenile court returned Sophia to Mother's care. As Mother now has physical custody of Sophia and her visitation with that child is no longer subject to monitoring, the appeal as to Sophia is moot. As for the other four children, we find no abuse of discretion and affirm the orders for monitored visitation.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal concerns only monitored visitation, we limit our factual and procedural summary accordingly.

Sophia was formerly a Regional Center client and has special needs including a diagnosis of autism. In March 2024, the Los Angeles County Department of Children and Family Services (DCFS) received a referral that Mother's male companion Jose Z. had physically and sexually abused Sophia, along with allegations of general neglect by Mother. When interviewed, Sophia described the abuse she suffered; several adults stated the child had contemporaneously complained to them about Jose's abuse.[1] Mother denied any abuse and claimed she never left Sophia alone with Jose for a meaningful amount of time.

---

[1] Sophia's descriptions of the abuse were not always consistent. The juvenile court described the facts as being "all over the place" but concluded that DCFS carried its burden of proof to establish the abuse and Mother's failure to protect Sophia from it. As Mother does not contest that substantial evidence supported the dependency court's assertion of jurisdiction, we do not detail the various descriptions of abuse Sophia provided.

3

DCFS interviewed Mother's other children and/or their fathers. Jayden had lived with his father his whole life, had not seen Mother in over two years, and said Mother did not call him. Jayleene had been living with her father for over two years and saw Mother at most once a week. Luna and Julian's father Eduardo said that when his relationship with Mother ended approximately two years earlier, she gave him both children and said that he needed to care for them. Eduardo also told DCFS that Mother had left Sophia alone in a motel room for seven hours. Sophia eventually called the police, and when they performed a welfare check the child was all alone. Mother then asked Eduardo to lie about Sophia having been left alone, which Eduardo refused to do.

On March 12, 2024, DCFS filed a petition pursuant to Welfare and Institutions Code[2] section 300 alleging that all five children needed the juvenile court's protection. At a March 13, 2024 arraignment and detention hearing, the court found a prima facie case existed and that the children were persons described by section 300. The court released Jayden, Jayleene, Luna, and Julian to the home of their respective fathers. The court ordered DCFS to assess closing the case for those four children with exit orders granting sole custody to their fathers. As for Sophia, the court removed her from Mother's care and ordered monitored visitation for Mother. The court also ordered DCFS to provide Mother with referrals to appropriate programs to address case issues.

---

[2] Unspecified statutory references are to the Welfare and Institutions Code.

4

DCFS then conducted further investigation. When re-interviewed, Jayden said he had last seen Mother at his elementary school graduation and could not remember much about her. Jayden's father said Mother stopped communicating with Jayden when he was around five years old and had not called him since his fifth-grade graduation. For her part, Mother claimed to have last seen Jayden in August 2023.

Jayleene said she did not see Mother often and described her as "not a mom I can talk to but I guess I can hang out with her when we can go to walk the dog." Luna and Julian were too young to provide meaningful information; their father Eduardo said Mother would see Luna and Julian on average "[m]aybe once a month" but that her contact was not consistent. Eduardo asked that Mother's visits be supervised to foster a connection with Mother while making sure Julian and Luna felt safe when seeing her.

Mother told DCFS she continued to disbelieve that Jose had molested or harmed Sophia, as Sophia "was never alone with him," but said she was no longer with Jose. As of June 2024, DCFS was unable to confirm that Mother had enrolled in any services including counseling.

On July 16, 2024, the juvenile court held a combined adjudication and disposition hearing. The court sustained the petition as pleaded. The juvenile court then indicated it was going to follow DCFS's recommendation to close the case for all the children except Sophia with exit orders awarding sole physical custody to the respective fathers. Mother requested her visitation be unmonitored. Jayden's father did not object. DCFS, Julian and Luna's father Eduardo, and minors' counsel all

requested that Mother's visitation be monitored.[3]  Eduardo's counsel expressed concern that Mother continued to deny any abuse of Sophia and that Luna and Julian were too young to speak up about any concerns during visits.  Minors' counsel said monitored visitation was also appropriate because of Mother's lack of prior visitation with the children, which had resulted in a "lack of . . . bond" and "hurt feelings."  The court found monitored visitation appropriate for all four children subject to the exit orders, and indicated for Mother to progress to "unmonitored visits, she's going to need to do conjoint counseling with each of the children."

With regard to Sophia, the court ordered her removed from Mother's home and suitably placed, granted Mother monitored visitation, and ordered a case plan including individual counseling, conjoint counseling, and sexual abuse awareness counseling.

Mother timely appealed the monitored visitation orders. During the pendency of this appeal, on May 9, 2025, the juvenile court held a review hearing.  The court found Mother's progress with her case plan to be substantial, terminated the suitable placement order as to Sophia, and returned the child to Mother's home.

## DISCUSSION

### A.    Mother's Appeal as to Sophia is Moot

Mother's appeal argues that her visits with Sophia should not be monitored.  Sophia now lives with Mother and their visits

___

[3] Jayleene's father was not present, and his counsel accordingly deferred to the recommendation of minors' counsel regarding monitored visitation.

are no longer subject to monitoring.  Thus, we can grant Mother no effective relief.  The now-superseded order regarding monitored visitation with Sophia does not have any legal or practical consequence going forward, nor does Mother claim that it does.  Accordingly, we dismiss the appeal as to Sophia as moot. (*In re D.P.* (2023) 14 Cal.5th 266, 276.)

**B.    The Monitored Visitation Order for Mother's Other Children Was Not an Abuse of Discretion**

### 1.    *Standard of Review*

Section 362.4 permits a juvenile court to issue custody and visitation orders when terminating jurisdiction.  (*Id.*, subd. (a).) "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child."  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)  "[T]he court is not restrained by 'any preferences or presumptions.' "  (*Ibid.*)

Custody determinations are "committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  An abuse of discretion requires that " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' "  (*Ibid.*)

### 2.    *Analysis*

When ordering visitation, the juvenile court may " 'impose any . . . conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it.' "  (*In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690, quoting *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.)  Here,

Mother's contact with Jayden, Jayleene, Luna, and Julian was sporadic and inconsistent. In some instances, it had been years since she had visited them. This had resulted in resentment and emotional harm, typified by Jayleene's description of Mother as not someone with whom she could talk but at most someone to "hang out with . . . walk[ing] the dog."

The juvenile court sought to balance providing visitation for Mother along with tools to repair her relationship with her children. It did so by ordering sexual abuse awareness counseling, having a monitor present for visitation to keep the children safe as well as make them feel safe, and ordering conjoint counseling between Mother and the children to address their strained relationship before unmonitored visitation occurred. Given the tenuous and fragile nature of Mother's relationship with her children, as well as the inability of the youngest children to advocate for themselves about any concerns during visitation and Mother's failure to participate yet in sexual abuse awareness counseling, the juvenile court did not abuse its discretion in ordering a monitor be present for Mother's visitation. The juvenile court could reasonably conclude a monitor was appropriate to ensure the children's safety and to facilitate the rebuilding of the children's relationship with Mother by making them feel safe with someone who was largely a stranger to them.

## DISPOSITION

As to Sophia P., the appeal is dismissed.  The exit orders providing for Mother to have monitored visitation with Jayden C., Jayleene C., Luna A., and Julian A. are affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.

9